CASE 37—ACTION ON · PROMISSORY NOTE—MARCH 29.

# Tranter v. Hibbard.

### APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.    AFFIRMED.

CONTEMPORANEOUS WRITING MODIFYING NOTE—OPTION OF PAYOR TO PAY
    STOCK, OR MONEY—FAILURE TO MAKE TENDER AT MATURITY OF
    NOTE—INFLATION OF STOCK—ALTERATION OF NOTE.

Held:    1. It is conceded that a note signed by the maker, and a
    contemporaneous writing signed by the payee, referring to and
    explaining or modifying the note, constitute but one contract,
    and the right of the maker to rely upon the contemporaneous
    contract can be taken from him only by discounting the note
    in bank, thereby raising it to the dignity of a foreign bill of
    exchange, as provided in Kentucky Statutes, section 463.
2. Construing the two papers together as one contract, it must be held
    that the option given by the agreement, "that if a deal, contem-
    plated by the payor, disposing of his interest in the National
    Union Oil Co., has not been accomplished at the maturity of the
    note, the payee will accept in payment thereof, fifty-five shares of
    the stock of said company," must be exercised only as of date
    of the maturity of the note, and not thereafter, and no tender
    of the shares being then made, the note was thereafter pay-
    able only in money.
3. The averment in the answer, that on the day the note was due, the
    payor went to the bank at which the note was made payable
    "for the purpose of delivering the certificates of stock, and tak-
    ing up the note; that he was then willing, ready and able to de-
    liver the stock in satisfaction of the note, but that the note was
    not then at the bank, nor had it theretofore been presented, nor
    was it thereafter presented at the bank for payment," does not
    aver a tender of the stock. If he had averred that he went to

Tranter v. Hibbard.

the bank, and demanded the note or announced a purpose to make tender of the stock, such averments in view of the fact that the note was payable in bank, would present a very different question.

4. The agreement by the payee to accept fifty-five shares of stock in the oil company meant stock of the company as it then existed, and he could not be compelled to accept the agreed shares after it had been inflated or otherwise depreciated.

5. An immaterial alteration of a note that does not affect its operation, or vary its meaning, does not make it void.

6. The word "fixed" after the figures designating the date of the maturity of the note, although inserted after its execution and delivery, was not a material alteration where the note was never placed on the footing of a bill of exchange, although it was payable in bank and might have been so placed.

7. Local customs, as to days of grace, can not be considered unless alleged and proved.

CHAS. H. FISK, ATTORNEY FOR APPELLANT.

1. Under the contract between appellant and appellee, no tender of stock was necessary. Had it been, the answers of appellant show a full tender thereof. Greer v. Bentley, 19 Ky. Law Rep., 1251; Walden v. Citizens' Savings Bank, 19 Ky. Law Rep., 1394.

2. The alteration of the note sued on by the payee rendered it void, whether material or not. 2 Daniels on Negotiable Instruments 4th ed.), secs. 1373, 1375, 1377; Wood v. Steele, 6 Wall, 80, 82, 83; Angle v. N. W. Mutual Life Ins. Co., 92 U. S., 330; 2 Parsons on Notes and Bills, 564, 582; Jackson, &c., v. Cooper, 19 Ky. Law Rep., 9; First Nat. Bank of Fort Worth v. Payne, 19 Ky. Law Rep., 839, 840; Byles on Bills, page 373 (side page 258), 375, 379; also 367 (side pages 253 and 254); Watson Plow Co., 16 L. R. A., 468, 469, 470; Blakey v. Johnson, 13 Bush, 197; Stephens v. Graham, 7 Serg. & R., 505; Craighead v. McLoney, 14 Sent. Law Jour., 193; Bank of Commonwealth v. McChord, 4 Dana, 191, 192; Lisle v. Rogers, 18 B. Monroe, 529, &c.; Newman, &c., v. King, 54 Ohio St., 273 and 281; Edwards on Bills, &c. (2d ed.), pages 92 and 416 (side pages 95 and 438); Sturgess & Hale v. Williams, 9 Ohio St., 443; Meersman v. Merges, 112 U. S., 141; Shipp's Admr. v. Luggett's Admr., 9 B. Mon., 8; Wallace & Park v. Jewel, 21 Ohio St., 163, 173, 174; McCaughy v. Smith, 27 N. Y., 39; Harsh, &c., v. Klepper, 28 Ohio St., 200; Boalt v. Brown, 13 Ohio St., 364; 2 Parsons on Notes and Bills, 564, 582; Patterson v. McNeally's Adm'r., 16 Ohio St., 348; Warrington v. Early, 2 El. & Bl., 763; Brown v. Jones, 3 Porter Ala.), 429; Waterman v. Vase, 43 M. E., 504; 1 Greenleaf on

Tranter v. Hibbard.

Evidence, sec. 565; McGrath v. Clark, 56 N. Y., 34; Dewey v. Reed, 40th Barb., 16; Tay v. Smith, 1 Allen, 477; Lee v. Staboid, 55 Me., 491; Presbury v. Michael, 33 Mo., 542; Hart v. Clanser, 30 Ind., 210; Bailey on Bills, p. 98; John v. Bank U. S., 2 B. Mon., 311; Singleton v. McQuerry, 85 Ky., 41; Marion Nat. Bank v. Russell, 14 Law Rep., 368; Cason v. Grant Co. Dep. Bank, 13 Ky. Law Rep., 635; Warren v. Fant, 79 Ky., 1; Neil v. Hays, 15 Ky. Law Rep., 784; First Nat. Bank of Springfield v. Dawson, 2 Ky. Law Rep., 230; Gaines v. Scott, 3 Ky. Law Rep., 418; Jeffries v. Simpson, &c., 11 Ky. Law Rep., 328; Whitesides v. North Bank of Kentucky, 10 Bush, 503; Bank of Limestone v. Penick, 2 B. Mon., 98; 5 B. Mon., 32; Pulliam v. Withers, 8 Dana, 99; Elbert v. McClelland, 8 Bush, 579; Woolfolk v. Bank of America, 10 Bush, 517; Brooks' Legal Maxims, p. 119, star page, 155; Master v. Miller (4 T. R., 320), Smith's Leading Cases; Hare v. Wallace, notes 1141, 1166, 1167; Lewis & Lewis v. Payne, 8 Cowen, 71; Withers v. Atkins, 1 Watts, 237; Martindale v. Follett, 1 N. H., 95; Fontaine v. Gunter, 31 Ala., 265; Stout v. Cloud, 5 Littell, 206; Davis v. Eppler, 36 Kansas, 639; Sanders v. Ragwell, 7 L. R. A., 744; Simmons v. Atkisson & Hampton Co., 23 L. R. A., 601; Vananken v. Hornbeck, 14 N. J. L., 178; First Nat. Bank v. Fricke, 75 Mo., 178.

3. The note sued on was negotiable. McCormick v. Clarkson, 7 Bush, 519.

4. If not negotiable, an alteration thereof avoided it. Walton Plow Co. v. Campbell, 16 L. R. A., 468, 469, 470.

W. H. MACKOY, ATTORNEY FOT APPELLEE.

1. A tender of shares of stock was necessary on day of maturity of note. Otherwise, appellant lost his election and appellee had the right to demand payment in money. Am. & Eng. Ency., vol. 25, p. 909, and cases cited; Chitty on Contracts, 11th Am. ed., vol. 2, 1207; Parsons on Contracts, 8th ed., vol. 2, p. 766; Townsend v. Wells, 3 Day (Conn.), 327; Roberts v. Beatty, 2 Penn., 63; Church v. Feterow, 2 Penn., 301; Choice v. Moseley, 1 Bailey (S. Ca.), 136; Wiley v. Shoenmak, 2 Greene (Ia.), 205; Vanhooser v. Logan, 3 Scam (Ill.), 389; Miller v. McClain, 10 Yerger, 245; Stewart v. Donnelly, 4 Yerger, 177; Lawrence v. Dougherty, 5 Yerger, 453; Plowman v. Riddle, 7 Ala., 775; Heywood v. Heywood, 42 Me., 229; Grieve v. Annin, 1 Halst. (N. Y.), 461, 464; Bro. Abr. Title "Debt," 159.

3. Duty to tender shares of stock at appointed time and place. Absence of creditor or of obligation no excuse. Answer fails to aver such tender.

Readiness, ability and willingness to deliver not equivalent to

Tranter v. Hibbard.

tender. Grant v. Groshon, Hardin 85, 86; Huston's Ex'r. v. Noble, 4 J. J. M., 130, 135; Jouett v. Wagon, 2 Bibb, 269; Colyer v. Hutching's Ex'r., 2 Bibb, 404, 406; Johnson v. Butler, 4 Bibb, 97, 98; Am. & Eng. Ency., vol. 25, p. 901, 918; Sands v. Lyon, 18 Conn., 18; Holmes v. Holmes, 12 Barb. (N. Y.), 137: North v. Meallett, 2 Hayw. (N. Ca.), 151; Gilmore v. Holt, 4 Pick. (Mass.), 258; Southworth v. Smith, 7 Cush (Mass), 391; Judd v. Ensign, 6 Barb. (N. Y.), 258; Hall v. Whittier, 10 R. I., 535; Miles v. Roberts, 34 N. H., 254; Goodwin v. Holbrook, 4 Wend. (N. Y.), 380; Lobdell v. Hopkins, 5 Con. (N. Y.), 516; 2 Greenleaf on Evidence, 15th ed., sec. 609.

4. The shares of stock which appellant holds and avers his ability to deliver are not the thing stipulated for; so that if a tender thereof had been made it would not have been good. Morawetz on Corporations, 2d ed., sec. 434.

5. When a promissory note, not upon the footing of a bill of exchange, is, by its terms, payable October 8, 1897, the insertion of the word "fixed" after October 3, 1897, in the body of the note, does not change the date of maturity, is not a material change, and does not avoid the note. Kentucky Statutes, secs. 478 and 483; Daniel on Negotiable Instruemnts, 4th ed., sec. 620; Strader v. Batchelor, 8 B. Mon., 168-170; Coleman's Ex'r. v. Tully, 7 Bush, 72, 74; Lisle v. Rogers, 18 B. Mon., 528; Duker v. Franz, 7 Bush, 273, 275; Jones v. Shelbyville, &c., Ins. Co., 1 Met., 64; Woolfolk v. Bank of America, 10 Bush, 517; Phillips v. Breck's Ex'r., 79 Ky., 465, 467; Thacker v. Booth, 9 Ky. Rep., 945.

OPINION BY JUDGE DuRELLE—AFFIRMING

Appellee, Hibberd, brought suit against appellant on a note as follows: "$2,752.50. Covington, Ky, October 3, 1896. On October 3, 1897, fixed, after date, I promise to pay to the order of William F. Hibberd twenty-seven hundred and fifty-two 50-100 dollars, without defalcation; value received; and payable at First National Bank, Covington, Kentucky. Watson W. Tranter." An answer and counterclaim were filed by appellant, setting up the fact that at the time of the execution of the note Hibberd entered into an agreement with him as follows: "Cincinnati, Oct. 3, 1896. Whereas, Watson W. Tranter has this day given me his note for $2,752.50, payable October 3,

1897, this statement is given to show that an agreement exists between me and Mr. Tranter that, if a deal contemplated by him, disposing of his interest in the National Union Oil Company stock, has not by that time been accomplished, I will accept in payment of the said note of $2,752.50 fifty-five shares (55) of the stock of the said National Union Oil Co. William F. Hibberd." He also alleged that before the institution of the action, but since October 3, 1897, to wit, on December 16, 1897, he advised plaintiff that the deal referred to in the contract had not been accomplished, and tendered fifty-five shares of stock of the National Union Oil Company in accordance with the agreement. The answer averred that he had always been ready and willing to deliver the stock referred to, and in his answer makes a further tender of certificates of stock in satisfaction of the note. It was also averred that since the execution of the note the stock of the company had been increased three-fold, and in consequence the tender made by the answer was of three certificates of the stock of the company of fifty-five shares each, payable to him as trustee, and by him in that capacity indorsed, which he asked the court to compel Hibberd to accept in satisfaction of the note. By amended answer, filed after demurrer had been sustained to the original answer, it was alleged that the note was not presented at the bank at which it was made payable at maturity, or payment thereof then and there demanded; that Hibberd had made no effort to collect the note until December 16th, when the tender was made; and that on the date of maturity he held the three certificates of stock of fifty-five shares each, ready to be delivered, and would have delivered the same had the note been presented at the bank where it was made payable. In a second paragraph he alleged that, since the note sued on was

signed, and delivered, it had been materially altered by the insertion of the word "fixed" in the beginning of the note,—"On October 3, 1897, fixed, after date, I promise to pay," etc.; and that by reason of said alteration the note was null and void. A demurrer being sustained to the answer as amended, a second amended answer was filed, to which also a demurrer was sustained, by which it was alleged that October 3, 1897, was Sunday; that on October 2d Tranter called at the bank where the note was made payable "for the purpose of delivering the certificates of stock, and of taking up said note mentioned in the agreement signed by plaintiff dated October 3, 1896, at which time he held said certificate of stock, and was ready, able, and willing to deliver the same in satisfaction of said note sued on, pursuant to the agreement made by plaintiff, and filed with his original answer and counterclaim herein; but he says that said note sued on was not then at said bank, nor had it theretofore been, nor was said note ever thereafter, presented at said bank for payment." It was also alleged that on October 5th he again called at the bank for the purpose of ascertaining whether the note had been sent to it for collection, and then held said certificates, and was "able, ready, and willing to deliver the same." After a demurrer to the second amendment had been sustained, Tranter stood upon his pleadings, and judgment was rendered against him for the amount of the note. Some of the contentions in his behalf have been eliminated by an amended record.

It is earnestly insisted by appellant, fully conceded by appellee, and the authorities support the doctrine, that the note, signed by the maker, and a writing, signed by the payee of the note, referring to and modifying or explaining the note, constituted but one contract. Daniel,

Neg. Inst. (4th Ed.) sections 156, 157.  And see Kentucky
Statutes section 474, and authorities there cited; 2 Pars.
Notes & B. c. 6, section 3; Id. c. 15, section 3; Byles, Bills,
p. 156; Edw. Bills & N. p. 138.  The right of the maker
to rely upon the contemporaneous contract can be taken
from him only by discounting the note in bank, thereby
raising it to the dignity of a foreign bill of exchange, as
provided in Kentucky Statutes section 483.  But appel-
lant seeks to make a distinction between the contract un-
der consideration and a note made payable in money or in
designated property, at the option of the payor, in which
case he practically conceded that a tender of the prop-
erty on the date of maturity would be essential, or the
payor would lose his option to pay in property.  He in-
sists that in this case the contemporaneous agreement
that, if Tranter had not effected his contemplated deal Hib-
berd would accept fifty-five shares of the stock of the oil
company in satisfaction of the note, was not an option to
Tranter to pay in money or stock at the date of maturity,
but was an agreement by Hibberd that if, by October 3,
1897, the deal had not been accomplished, he would there-
after accept stock in payment of the note.  This construc-
tion is rather ingenious than plausible.  Nothing in the
contemporaneous agreement indicates an intention to ex-
tend the date of the maturity of the note, or the date of
payment, whether in money or stock.  Construing the
two papers together as one contract, the option given by
the agreement must be held to be exercised only as of the
date of maturity of the note, for surely Hibberd, the payee,
did not intend to give Tranter the option to pay in money
on a day certain, or in stock on any day thereafter, to be
selected by Tranter.  The language will not bear this
construction.  A tender, therefore, was necessary.

But it is urged that a tender at maturity is alleged by the answers. It will be observed on examination of the answers that a tender in apt terms is alleged to have been made some two months and a half after the maturity of the note. But the averments relied on as showing a sufficient tender at the date of maturity are: That the note was payable October 3d, which was Sunday; that Tranter, on October 2d, went to the bank at which the note was made payable, "for the purpose of delivering the certificates of stock, and of taking up said note mentioned in the agreement"; that he was then ready, able, and willing to deliver the stock in satisfaction of the note, but that the note was not then at the bank, nor had it theretofore been presented, nor was it thereafter presented at the bank for payment. Similar averments are made as of October 5th. This is not an averment of a tender. No averment is made of an effort to make a tender. It was been held that, "when the time and place are fixed, a tender at such time and place is good, though there is no one there to receive the articles." Gilmore v. Holt, 4 Pick. 258. And see Southworth v. Smith, 7 Cush. 391; Judd v. Ensign, 6 Barb. 258. If he had averred that he went to the bank, and demanded the note, or announced a purpose to make tender of the stock, such averments, in view of the fact that the note was payable in bank, and the payor was, therefore, not required to seek the payee, wherever he might be, for the purpose of making tender, would present a very different question. But no such averments are made. The doctrine as to tender is well stated in 2 Pars. Const. (8th Ed.) p. 766: "If the promise be to pay money at a certain time, or deliver certain chattels, it is a promise in the alternative, and the alternative belongs to the promisor. He may do either the one or the other, at his

election. Nor need he make his election until the time when the promise is to be performed; but, after that day has passed, without election on his part, the promisee has an absolute right to the money, and may bring his action for it." To the same effect, see 2 Chit. Const. (11th Ed.) p. 1207; 25 Am. & Eng. Enc. Law, p. 909, and authorities cited. The Kentucky cases seem to support the same doctrine. See Huston's Ex'r v. Noble, 4 J. J. Marsh. 130; Jouett v. Wagnon, 2 Bibb, 269; Colyer v. Hutching's Ex'rs, Id. 404; Johnson v. Butler, 4 Bibb, 97. Moreover, the certificates which Tranter averred his readiness and willingness to deliver in satisfaction of the note did not represent the stock which Hibberd agreed to receive in satisfaction of his note. Hibberd agreed to accept fifty-five shares of the stock of the oil company, and this agreement means stock of the oil company as it then existed. It appears from the answer and certificates filed therewith that the capital stock of the company at that time was $100,000, and that before the date of maturity of the note it had been inflated to $300,000. It does not appear whether the alleged increase of stock was valid, or within the power of the company; whether its charter definitely fixed its capital stock (in which there would be no implied authority to increase it); or whether, under the charter, there was any liability of private property for corporate debts which would be increased by an increase of stock. In any event, when Hibberd agreed to become a stockholder it was an agreement to subject himself to the terms of the existent contract between the stockholders, and to be bound by the law under which the corporation was organized. On the other hand, he did not agree to enter into a contract established upon a different basis of capitalization, or that his

rights, when he should become stockholder, should be affected by a corporate action to which he could not be a party and in which he could have no voice.

This brings us to a discussion of the alleged alteration. Was the insertion of the word "fixed,"—which, by the demurrer, is admitted to have been made after the execution and delivery of the note,—following the date at which the note was made payable, a material alteration? Considerable time and space has been occupied by appellant in discussing the effect of a material alteration. Upon this point there is no question. The authorities are overwhelming, and practically unanimous. "Any change in the terms of a written contract which varies its original legal effect and operation, whether in respect to the obligation whch it imports, or to its force as a matter of evidence, when made by any party to the contract, is an alteration thereof, unless all the other parties to the contract gave their express or implied consent to such change. And the effect of such alteration is to nullify and destroy the altered instrument as a legal obligation, whether made with fraudulent intent or not." 2 Daniel, Neg. Inst. (4th Ed.) section 1373. It seems to be uniformly held that an alteration in the date of payment is a material alteration. In this State in some of the earlier cases,—as in Johnson v. Bank, 2 B. Mon. 311,—it was held that any alteration in a deed or note, whether material or immaterial, would vitiate the instrument. But this doctrine has not been adhered to in the later cases. In Lisle v. Rogers, 18 B. Mon. 528, in an opinion by Judge Simpson, the court concedes "the correct doctrine to be that an alteration, to avoid such instrument, must be material; and such seems to be the tendency of modern decisions on the subject." In Duker v. Franz, 7 Bush, 275, it was said, in an opinion

by Judge Lindsay: "It seems to be the correct doctrine that an alteration of a note after its execution and delivery will render it void in case said alteration is to any degree material; and, if the true date of the note sued on, was 1868, and it was altered to 1869, it can not be doubted but that such alteration was material." In that case Judge Lindsay said: "We agree that the holder of the note has no right to make an alteration to correct a mistake, unless to make the instrument conform to what all parties to it agreed or intended it should have been; but this much he can do without destroying the legal efficacy of the writing." In Jones v. Insurance Co., 1 Metc. 64, the court, through Judge Duvall, cited approvingly 2 Pars. Cont. 226, to the effect that, "if the alteration does not vary the meaning of the instrument, or does not affect its operation, there is no good reason why it should make the instrument void,"—citing, also, Railway Co. v. Bacon, 15 Pick. 239; Langdon v. Paul, 20 Vt. 217. In Phillips v. Breck, 79 Ky. 467, it was said: "The alterations in the paper do not change its legal sense, and are, therefore, not material." In Thacker v. Booth (Ky.) 6 S. W. 460, it was held that the insertion in a note for purchase money of the words, "Lien to hold until paid in full," was not a material alteration, and did not affect the payor's liability. A number of Kentucky cases are cited on behalf of appellant, but in each instance the alteration changed the legal effect of the instrument. The note in question here is a non-negotiable promissory note, which has never been placed upon the footing of a bill of exchange. It does not come within the description given in section 483, Kentucky Statutes, of notes which are, by the statute, "placed on the same footing as foreign bills of exchange," to wit, "promissory notes payable to any person or to a corporation, and

payable and negotiable at any bank incorporated under any law of this Commonwealth, or organized in this Commonwealth under any law of the United States, which shall be indorsed to and discounted by the bank at which the same is payable, or by any other of the banks in this Commonwealth as above specified." "Only those instruments which are negotiable by the law merchant, or those which are placed upon the same footing by statute, and are, strictly speaking, commercial instruments, are entitled to grace," Daniel, Neg. Inst. (4th Ed.) section 620. The case of Strader v. Batchelor, 8 B. Mon. 168, recognizes the doctrine that the allowance of days of grace is a commercial usage under the law merchant, applicable only to commercial paper, viz., bills of exchange, or domestic or foreign orders, and such paper as is, by statute, placed upon the same footing. In Coleman's Ex'r v. Tully's Adm'r, 7 Bush, 72, where the question was one of the measure of diligence necessary to charge the assignor of a non-negotiable promissory note, payable at a fixed day after date, the day fixed in the note is recognized as the date of the maturity of the note, without grace. As, therefore, the note in question was not commercial paper, it was not entitled to grace. The date of its maturity was October 3d, or, as that date fell upon Sunday, on the Saturday before; and the insertion of the word "fixed" after the date of maturity had no effect to change the time when the note actually became payable, and was not a material alteration, so as to vitiate the instrument. Nor, in our opinion, does the alleged purpose with which the alteration was made cut any figure upon this question. If the alteration were material, the purpose with which it was made might be material upon the question of whether the payee had any right of recovery in any form of action; but, as the change was immaterial,

Tranter v. Hibbard.

the purpose is equally so.  But appellant contends that it was a negotiable piece of paper,—that is, could have been negotiated,—because, being payable to order, and at a bank by law authorized to discount it, it would have been placed on the footing of a foreign bill of exchange by indorsing and discounting it to the bank.  McCormack v. Clarkson, 7 Bush, 519.  But the note never was discounted, and therefore never became entitled to days of grace. It might as well be contended that, because the note might have been discounted, the payor was entitled to the five-years bar of the statute of limitations applicable to bills of exchange, though the note was never placed upon that footing.

Appellant argues that there is a local custom among the banks of Covington to grant three days of grace for the payment of a note payable in bank, without reference to the question of whether the note has been discounted. This custom is not alleged.  Local customs as to days of grace must be alleged and proved.  Goddin v. Shipley, 7 B. Mon. 575; Caldwell v. Dawson, 4 Metc. 121; Huston v. Peters, 1 Metc. 562. For the reasons given, the judgment is affirmed.