## Merchants-Citizens National Bank, Executor, Appellant, v. Mauser et al.

Argued May 14, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Fred B. Gernerd,* for appellant.—The successive increases of the capital stock, did not produce such a physical change in the structure of the corporation as to cause in and by itself the cancellation of the agreement of January 2, 1917.

The admissibility of the statement embodying their answer for refusal which was handed to the executors at the time tender of the stock was made, and demand made of defendants for the payment of $242,000, was a serious error: Bassler v. Niesly, 2 S. & R. 352; Galbraith v. Green, 13 S. & R. 85; Parry v. Parry, 130 Pa. 94; King v. King, 281 Pa. 511; Africa v. Trexler, 232 Pa. 493; Grove's Est., 38 Pa. Superior Ct. 424.

It was error to admit the will of the late J. Mark Mauser in evidence to show that he no longer regarded the agreement of January 2, 1917, in force, when his widow had elected to take against the will: Cunningham's Est., 137 Pa. 621; Powell's Est., 225 Pa. 518.

*Thomas F. Gain,* with him *Dallas Dillinger, Jr., Morton Z. Paul* and *Francis Shunk Brown,* for Anna M. Mauser, widow, intervening appellant.—The agreement of 1917 was binding on the survivors to that contract, and the heirs and assigns of the deceased party thereto: Gross v. Machine Works, 277 Pa. 363; Com. v. Neff, 271 Pa. 312; Swarthmore v. Transit Co., 280 Pa. 79; Corona C. & C. Co. v. Dickinson, 261 Pa. 589; Collingdale Boro. v. Transit Co., 274 Pa. 124; Nether Providence Twp. v. Transit Co., 280 Pa. 74; Com. v. Bader, 271 Pa. 308.

Declarations which are favorable to the interests of the person making them, made in the absence of the other party to the transaction and not coming within some recognized exception to the hearsay rule nor offered to rebut evidence of want of credibility, are not admissible on behalf of the person making them: King v. King, 281 Pa. 511; Dempsey v. Dobson, 174 Pa. 122; Murdock v. Biery, 269 Pa. 577; Stybr v. Walter, 272 Pa. 202.

The admission of the will of J. Mark Mauser as evidence of the rescission of the contract of 1917, was improper: Cunningham's Est., 137 Pa. 621; Weichelberger's Est., 135 Pa. 160, 169; Zimmerman v. Zimmerman, 47 Pa. 378, 379, 381; Boyer v. Smith, 3 Watts 449-450.

*Owen J. Roberts,* with him *Reuben J. Butz,* for appellees.—The cancellation or rescission of a written contract may be oral or by implied agreement, which may be shown by the acts of the parties and the attending circumstances: Anstead v. Cook, 291 Pa. 335; Noon v. Rodstein, 89 Pa. Superior Ct. 153; Hudson v. Hyman, 85 Pa. Superior Ct. 245; Holloway v. Frick, 149 Pa.

178; Brady v. Colhoun, 1 P. & W. 140; Brentwood Realty Co. v. Moses, 73 Pa. Superior Ct. 307; Producers Coke Co. v. Hoover, 268 Pa. 104; Achenbach v. Stoddard, 253 Pa. 338; Germantown Dairy Co. v. McCallum, 223 Pa. 554; Reber v. Brownback, 27 Pa. Superior Ct. 471; Trumbower v. Woodley, 26 Pa. Superior Ct. 249; Colt v. Selden, 5 Watts 525; Hyde v. Kiehl, 183 Pa. 414; Flegal v. Hoover, 156 Pa. 276.

The corporate proceedings and records to show change of capital stock structure, were admissible.

Knowledge of effect on stock by change in capital stock structure is a circumstance to be considered in determining whether the contract was abandoned or rescinded.

The will was proper as evidence.

OPINION BY MR. JUSTICE WALLING, July 1, 1929:

The Mauser Mill Company, engaged in the grain milling business in Lehigh and Northampton Counties, was duly chartered as a corporation in 1902, with a capital stock of $200,000, divided into 4,000 shares of the par value of $50 each. It prospered and in 1917, J. Mark Mauser, George B. Mauser and Harry J. Lerch, the principal and controlling stockholders, the former being brothers and Lerch their brother-in-law, entered into a written agreement that, "..... upon the death of either the survivors shall and will within fifteen days thereafter purchase the shares of stock of the Mauser Mill Company owned by the other at the time of his decease, for the twofold purpose, among others, of converting said stock into cash for the benefit of the deceased and in order that the survivors may acquire said shares of stock, at the price of one hundred dollars per share and the same shall and will be assigned and delivered at said price to such survivors." The contract also provides that the stock shall be paid for in ten equal annual installments and is expressly made binding on the legal representatives, etc., of the parties.

When this agreement was made, the capital stock was $200,000, but in 1920, $100,000 of preferred stock was duly issued and given preference over the common stock. The proceeds of the preferred stock increased the corporate assets. In 1922, a stock dividend of $200,000 was duly declared, which doubled the amount of common stock, but added nothing to the assets. The three parties to the agreement of 1917 joined in the issues of stock to which we have just referred. J. Mark Mauser died on August 3, 1924, having in the preceding June made his last will, item 5 of which reads:

"I give, devise and bequeath all of my shares of common stock that I now own in the Mauser Milling Company, and all monies that shall come into the hands of my executors after my personal obligations and the administration expenses of my estate have been paid, to Harry J. Lerch and the Citizens Trust Company of Allentown, Lehigh County, Pennsylvania, in trust, they to invest all monies coming into their possession, other than that received as dividends and interest, in first mortgage securities upon real estate, and to pay the net annual income thereof unto my dear wife, Anna R. Mauser, during the term of her natural life." Item 7 is: "I hereby empower my executors or trustees, should they deem it for the best interest of my estate, and decide to sell my shares of common stock or any portion thereof, then I direct that my associates in the Mauser Milling Company, shall be given the first opportunity to buy the same, at and for the price of fifty-five ($55.00) dollars per share, and the monies so realized from the sale of said shares of stock is to be held in trust for the same purposes and upon the same conditions as set forth in paragraph five." In item six he also fixes the value of his common stock at $55 a share, which was approximately its selling price in 1924, whereas the selling price in 1917, when but $200,000 of stock was outstanding, was above $100 a share.

The widow of J. Mark Mauser declined to take under the will and at her instance the acting executor brought this suit to recover from the surviving members of the contract of 1917 the $100 a share for the 2,420 shares of common stock owned by J. Mark Mauser at the time of his death. This included his original holding and the stock dividend. The defendants averred that subsequent to the issue of the latter the contract of 1917 had been expressly cancelled by the parties and their copies thereof marked cancelled or destroyed. There was the evidence of three witnesses to the effect that J. Mark Mauser had joined in such express cancellation and attempted to find his copy of the contract that it might be marked cancelled or destroyed. It is always competent for the parties to a written contract to abandon or cancel it by a subsequent parol agreement: Anstead et al. v. Cook, 291 Pa. 335. At the trial each side asked for binding instructions which were refused and the jury found for the defendants; from judgment entered on the verdict plaintiff has appealed.

It is unnecessary to consider the numerous complaints as to alleged trial errors, for in our opinion the trial judge should have directed a verdict for the defendants. Where a contract provides for the delivery of corporate stock at a future time, the presumption, in the absence of any provision to the contrary, is that the parties intended such stock as was in existence when the contract was made. In Lafountain & Woolson Co. v. Brown, 101 Atl. 36, the Supreme Court of Vermont holds that "In construing a contract to sell corporate stock, it will be presumed that the parties intended, nothing to the contrary appearing, that the shares were to be transferred in their condition at the time of the bargain." In 1917 each share of stock represented a one-four thousandth part of the corporate property; when J. Mark Mauser died in 1924 each share represented a one-ten thousandth part. The stock dividend of 1922 doubled the number of shares of common stock, as above stated, without any

addition to the corporate property. This change in the structure of the corporation was so radical as to relieve the defendants from obligation to take the 2,420 shares of diluted stock at $100 a share. In other words, this change in the corporate stock was so great as to relieve the parties from liability under the contract. Otherwise, J. Mark Mauser might have practically doubled his money by buying stock of this corporation at the market price shortly before his death. In Tranter v. Hibberd, 56 S. W. 169, the Supreme Court of Kentucky holds that "An agreement by the payee of a note to accept in payment a certain number of shares of stock in a named corporation means stock of the corporation as it then existed, and a tender of the agreed number of shares after the stock has been greatly inflated is not good." See also American Trading & Importing Co. v. Miron & Lifson, 121 Atl. (N. J.) 744; New Jersey Midland Railway Co. v. Strait, 35 N. J. L. 322. So, while, so far as appears, this question has not heretofore been passed upon by an appellate court in this State, our conclusion above stated seems to be in harmony with the decisions in other jurisdictions. True, defendants consented to the successive additions to the capital stock, but so did J. Mark Mauser. His estate should not take advantage of a situation he helped to create. Where the parties mutually render performance impossible, the contract will be regarded as abandoned: 13 C. J. 627, citing Holzhier v. Hayes, 133 Cal. 456, 65 Pac. 968. In the instant case the parties rendered the delivery of shares of stock, each representing four one thousandth part of the corporate property, impossible.

Moreover, by the specific provisions of his will, J. Mark Mauser treats the contract as abandoned. He gives all his stock in trust, inter alia, for the life use of his widow, with discretionary power in the trustees to sell the same, or any part thereof, giving his associates in the corporation (which includes the defendants and others) the first opportunity to buy at $55 per share. In

view of these provisions it is vain to contend that he held an existing contract by which the stock was already sold to defendants at $100 a share, to be delivered fifteen days after his death.

It is urged, however, that the widow, having taken against the will, as to her he died intestate. This is true as to the disposition of his property, but does not destroy the probative force of his statements as to facts. Suppose the will stated that testator had received a payment of $1,000, not endorsed of record, on a certain mortgage he held against John Smith, this statement would stand as an admission although the widow took against the will. The husband's estate passes to his legal representatives and the widow's right thereto, so far as relates to choses in action, can only be established by a suit in their name. This principle, clearly stated in Gallagher's Est., 76 Pa. 296, has often been cited with approval; and see 40 Cyc. 1991. Even when so brought there can be no recovery on a right of action which the husband had lawfully relinquished. As against a claim on behalf of J. Mark Mauser's estate, the will was prima facie evidence of the abrogation of the contract. There is nothing to suggest that the husband was attempting to denude himself of property to defraud his widow, so that question is not in the case.

The judgment is affirmed.