## DENTON MILLING CO. v. BLEWETT.*
### (No. 2755.)

(Court of Civil Appeals of Texas. Texarkana. May 30, 1923. Rehearing Denied June 28, 1923.)

**1. Corporations ⬤⇒57—Ambiguous or obscure by-laws interpreted in harmony with general intendment and to promote business welfare.**

In construing ambiguous or obscure provisions of by-laws, that interpretation in harmony with the general intendment thereof as a whole, and best calculated to promote the corporation's business welfare, should be adopted.

**2. Corporations ⬤⇒285—Employment of manager for more than one year held prohibited by by-laws so that he could not recover for his discharge before the end of five years.**

Under a milling company's by-laws providing for annual election of directors and employment of a manager, by the directory elect, and in view of Rev. St. art. 1159, providing that the business affairs shall be carried on under the general direction of a board of directors, the directors could not employ a manager for a term of more than one year, though the same members were repeatedly elected, and a manager employed for five years cannot recover damages because of his discharge before the end of his term.

**3. Appeal and error ⬤⇒930(3)—Facts essential to support judgment assumed found.**

Though jury finding on interrogatory propounded by the court is rejected as too ambiguous, it must be assumed on appeal that the court found all the essential facts required to support the judgment.

**4. Corporations ⬤⇒308(6)—Invalidity of contract to employ manager for longer term than permitted by by-laws does not affect right to compensation therein fixed for time employed thereunder.**

The invalidity of a contract to employ a corporation manager for more than a year in violation of the corporation's by-laws does not impeach its legal effect as fixing his compensation for the time the contract was recognized by the board of directors.

**5. Appeal and error ⬤⇒930(1)—Debt assumed just, unpaid, and not subject to offsets on appeal from judgment on verdict for plaintiff in action on notes.**

In deference to a verdict for plaintiff in an action on notes, it must be assumed, on appeal from a judgment thereon, that the debt was just, unpaid, and not subject to any offsets.

**6. Estoppel ⬤⇒90(1)—Corporation sued by former manager on notes executed to him cannot assert that his annual financial statements were incorrect or incomplete.**

In an action against a corporation by its former manager on notes executed by it to him and his wife, defendant cannot assert that plaintiff's annual financial statements to the board of directors were not fair, correct, and as full as the directors cared for, or that any essential business detail was concealed.

**7. Corporations ⬤⇒414(5)—Corporation held liable to former manager on notes executed to him in its name by its treasurer.**

A corporation whose directors made no inquiry as to the purpose for which and by whom bills payable to its manager, as shown by his annual statements, were executed, and knew that the by-laws did not specifically authorize any particular individual to execute notes, *held* liable to such manager as payee of corporate notes in the amount of such bills signed by its treasurer, a member of the board, who had signed and paid out money in satisfaction of similar obligations for the company.

#### On Motion for Rehearing.

**8. Trial ⬤⇒351(2)—Request for submission of issue in form requested held properly refused.**

In an action for breach of a contract of employment, where the only request for submission of the issue as to the fairness of the contract omitted important details in stating it, the court properly refused to submit the issue even if raised by the evidence.

**9. Appeal and error ⬤⇒1234(4)—Sureties on supersedeas bond liable for satisfaction of any part of judgment sustained.**

The purpose of a supersedeas bond being to secure payment of the judgment appealed from (Rev. St. art. 2101), the sureties thereon, if any part of the judgment is sustained, become liable for its satisfaction, though the conditions of a cost bond are fulfilled when the judgment is reversed or so reformed as to impose the costs on appellee.

Appeal from District Court, Denton County; C. R. Pearman, Judge.

Action by S. A. Blewett against the Denton Milling Company. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

W. O. Davis, of Gainsville, and Owsley & Owsley and R. H. Hopkins, all of Denton, for appellant.

Williams & Williams, of Waco, and Sullivan, Speer & Minor, of Denton, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for damages for the breach of a contract and for a sum due on three promissory notes, together with interest and attorney's fees. The material facts are, in substance, as follows: The Denton Milling Company, the appellant, was organized about 20 years ago by G. H. Blewett, now dead, who was the father of the appellee. It was incorporated with a capital stock of $50,000, most of which was owned by G. H. Blewett. Some of the stock he transferred to the appellee and other sons, and all of it passed to his widow and children upon his death, which occurred in 1917.

The business affairs of the corporation were under the management and control of a board composed of nine directors, of which G. H. Blewett was in 1917 the president and the appellee the vice president. At the beginning of the year 1916 the appellee had acquired some stock in the corporation, and at the instance of his father became its manager, and held that position under the contract made with his father till about June 1, 1918. On that date, which was the beginning of a new fiscal year of the corporation, the directors held a regular meeting. The appellee, as the vice president, became the presiding officer of the board, and called the meeting to order. There were present six members of the board—one more than was sufficient to constitute a quorum. At this meeting the board elected a president, a vice president, and a secretary and treasurer for the following fiscal year. The appellee desired a better contract as manager than that under which he was then working, and then presented a demand to that effect to the board. After some discussion it was finally agreed that he should be employed for five years upon the following terms: He was to be allowed a salary of $3,000 per annum, and in addition thereto all net earnings above a 10 per cent. semiannual dividend on the capital stock then issued, after a fair and just charge-off for depreciation of the plant and loss on bad accounts. The appellee continued as manager under that contract for three years. The first two years the mill was prosperous, and his profits, after paying the semiannual dividends and making the stipulated deductions, amounted to several thousand dollars. During the third year business was not so good. It seems that the profits did not amount to enough to pay the usual dividends, and the appellee got nothing for his services as manager beyond his salary of $3,000 for that year. The directors at their regular annual meeting at the close of that year demanded that the appellee pay into the treasury of the corporation, out of his previous profits, enough to supply what was needed to pay the usual dividends on the stock. This he refused to do, and was thereupon discharged. He then filed this suit to recover $56,000 as damages for the breach of the contract, and also sought a recovery of $45,000 alleged to be due on three promissory notes theretofore executed by the company and held by him.

The appellant answered at some length. It denied the execution of the notes, alleging that they were issued without authority and by an employee under the influence of the plaintiff, and who had no power to bind the corporation by signing its name to such contracts. The defense to the claim for damages here relied on is that the contract of employment was invalid because of the participation of the plaintiff in the proceedings of the meeting of the board at which the contract was made; that the contract was unreasonable and unfair to the corporation, and that the board of directors had no power under the by-laws to elect a manager for more than one year.

The case was submitted to the jury upon special issues, and the following is a summary of the findings: (1) The minutes of the Denton Milling Company contain all the provisions of the contract of employment; (2) the board of directors at that meeting acted in good faith, believing that they were serving the best interest of the company and its stockholders in making that contract; (3) the plaintiff, S. A. Blewett, did not exercise a controlling influence over the board of directors; (4) the plaintiff sustained $30,000 damages by reason of his discharge; (5) the notes sued on represent an amount of money which the corporation owed the plaintiff for borrowed money and profits under his contract; (6) the board of directors authorized, or ratified, the execution of the notes sued on.

In addition to its defensive pleadings the appellant also alleged by way of a crossaction, that the appellee had while manager adulterated the output of the mill in a manner calculated to damage its business. Those issues were also submitted to the jury and settled in appellee's favor. The jury further found that in making the annual settlements the appellee had not overestimated the assets of the corporation, and that no worthless claims were included in the estimated profits of the company. Upon those findings the court entered a judgment in favor of the appellee for the full amount of the note sued on, together with interest and attorney's fees, and for $30,000 as damages for the breach of the contract.

For convenience of discussion that portion of the judgment which awards damages for a breach of the contract will be first considered.

Logically the first question, then, is, Did the board of directors have the authority to bind the corporation in a contract employing a manager for more than one year? If, as contended by the appellant, no such authority existed, for that reason alone the judgment for damages was wrong, and all other objections to the contract and to the court's charge upon that phase of the case may be treated as immaterial. The following is a copy of the material portions of the by-laws of the Denton Milling Company:

"Article 1.

"Section. 1. All meetings of the stockholders of this corporation shall be held annually at Denton, and a majority of the capital stock issued shall constitute a quorum for the transaction of business.

"Sec. 2. It shall be the duty of the stockholders to pass upon reports of the directors, elect a directory for the ensuing year and transaction of any business that may properly come before them.

"Article 2.

"Section. 1. The directory elect shall meet and organize by electing a president, vice president, secretary and employing a manager.

"Sec. 2. The officers of the directory shall be ex-officers of the corporation.

"Sec. 3. The fiscal or milling year shall be from June 1st to May 31st, inclusive.

"Sec. 4. A majority of the directors shall constitute a quorum.

"Sec. 5. The directory shall hold its regular meeting quarterly on Tuesday after the first Monday in June, September, December, and March.

"Article 3.

"Section 1. It shall be the duty of the president to preside at all meetings of the stockholders or directors, shall sign all official papers requiring his signature, and shall cast the deciding vote in case of tie.

"Sec. 2. The president shall have general supervision of the business, power to call special sessions of either the stockholders or directors at his own option or upon written request of a majority of their respective membership.

"Article 4.

"Section 1. The vice president, shall exercise all the functions of the president in his absence.

"Article 5.

"Section 1. It shall be the duty of the secretary and treasurer to keep a complete record of all meetings of the stockholders and directors and sign all papers requiring his official signature. He shall take charge of all funds or moneys belonging to the company and submit statements of receipts and disbursements to the directors at their regular meetings. He shall, if required by the president make bond to the company for the faithful discharge of his duty.

"Article 6.

"Section 1. The manager shall have special supervision of the business and employ or dismiss employees subject to the approval of the president.

"Sec. 2. He shall submit to the directory at their regular meetings a quarterly statement of the business and at the end of the milling year an annual statement of all business of the corporation."

[1] While these by-laws do not expressly provide that a manager shall not be employed for a longer term than one year, that seems to be a fair inference from the language used. The directors are to be elected annually by the stockholders, and each newly elected board is directed to elect a new president, who is to have the general supervision of the business, and to employ a manager, who is to have special supervision. The direction to annually employ a manager is just as explicit as is the requirement to elect a president annually. Article 1159 of our Revised Civil Statutes provides that the business affairs of corporations of this character shall be carried on under the general direc-

tion of the board of directors. The manager, who has special supervision, is the creature of the board, and must be the agent through whom the corporate duties of the directors are to be performed. Each new board is responsible to the stockholders for the manner in which the business is conducted, and should, in the nature of things, be free to select its own agents. If one board of directors may contract with a manager for employment extending over a term of five years, they can materially handicap the freedom and power of their successors in the management of the business of the corporation. The successful operation of concerns of this character must depend largely upon the efficiency of the manager. It is too obvious for argument that the financial welfare of the corporation is best served by allowing each in-coming board of directors all the power they may lawfully claim. In construing ambiguous or obscure provisions of the by-laws we think that interpretation should be adopted which is in harmony with the general intendment of the governing regulations as a whole, and which is best calculated to promote the business welfare of the corporation. It is manifest that in providing for a change in the directorate once every year it was intended to reserve to the stockholders the power to also control all those important agents upon whose efficiency the business success of the corporation depended. A general manager stands next to the president in the power of control. Upon his loyalty and efficiency the business success of this corporation appears to have mainly depended. The stockholders could do little at their annual meetings toward removing an inefficient management of the affairs of the concern if so important an official as the manager could not be changed when a change was needed. The following authorities, we think, sustain this conclusion: Llewellyn v. Aberdeen Brewing Co., 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B, 667, and cases cited in notes; Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N. Y. Supp. 788.

As supporting the authority of the board of directors to contract for an employment extending beyond their terms of office, the appellee refers to 14A Corp. Jur. 72, and quotes the following language:

"The fact that the directors are elected annually does not require that the term of an officer appointed by them shall be one year."

The cases referred to in the notes do not support that proposition in the text.

[2] We are of the opinion that under the by-laws of the appellant the board of directors' had no authority to enter into the contract employing the appellee for a term of five years as manager of the corporation. It is unimportant that the same members were repeatedly elected as directors. The validity of their action is to be determined

by legal rules, and not by particular conditions that may exist. The fact that a new board is composed of the same individuals as the old board did not enlarge the legal authority of the old board. It follows, then, that the appellee, having no valid contract entitling him to hold the place of manager for five years, has no cause of action because of his discharge. Hence he was not entitled to recover any damages for a breach of the contract. That conclusion obviates the necessity for considering other assignments relating to that portion of the judgment.

[3-5] The next question is, Were the promissory notes sued on valid and binding obligations of the corporation? The testimony shows, and the jury found, that those notes were signed "The Denton Milling Company, by E. K. Blewett, Treasurer." The testimony further shows that E. K. Blewett executed the notes in that manner at the instance or request of the appellee, who was the real beneficiary and payee of the notes. While two of the notes were made to his wife and later transferred to the appellee, the real consideration was the amount of money due him by the company. The finding of the jury upon that issue is somewhat ambiguous. The court propounded the interrogatory in the following form:

"Did the board of directors of the Denton Milling Company authorize the execution by E. K. Blewett of the three notes herein sued on; or did said board ratify the execution of said notes?"

The jury answered, "Yes." But, even if the finding of the jury be disregarded as too ambiguous, we must assume that the court found all the essential facts required to support the judgment. The fact that the contract was invalid for a term of five years is not ground for impeaching its legal effect as fixing the compensation of the manager during the time the contract was recognized by the board of directors. Upon testimony somewhat conflicting the jury found that the real consideration of the notes was in part money loaned by the appellee to the company and in part money which the company owed him for services previously performed under the contract. In deference to the verdict we must assume that this debt was just, unpaid, and was not subject to any offsets. The question remaining is, Did the treasurer, E. K. Blewett, have the authority to embody that indebtedness in the form of promissory notes which provided for the payment of the conventional rate of interest and for attorney's fees in case of an enforced collection? Or, if there was no actual authority emanating from the board, did the board in legal effect ratify what E. K. Blewett had done? This conclusion of fact is assailed as unsupported by the evidence.

[6, 7] The record shows that the appellee, while manager, and during the last three years of his term, made annual statements to the board of directors, disclosing the financial condition of the corporation. It cannot now be said that those statements were not fair and correct, and as full as the directors cared to have. Nor can it be said that any essential business detail was concealed. Those statements disclosed bills payable to the full amount claimed by the appellee. There is no evidence tending to show that the directors inquired concerning the purpose for which the bills payable had been executed, or by whom they were signed, or to whom they were payable. Items of this character and in this form had been carried in the reports for previous years. The members of the board knew that the by-laws had made no specific provision lodging the power to execute promissory notes in any particular individual. They also knew whether they had expressly authorized the issuance of such notes. The president knew that he had not signed them. There was evidence tending to show that the treasurer had formerly signed similar obligations for the company, and that he paid out the money in satisfaction of all its obligations. The treasurer was also a member of the board, and he knew every detail of this transaction. If the board did not know more it is because they did not make any further inquiries. These obligations of the company were not any more onerous because they were payable to the appellee, instead of to some other party. There appears no good reason why they should not be paid.

We conclude that under the evidence and the findings of the jury the appellee is entitled to recover on the notes according to their tenor and effect. The judgment of the trial court, however, will be reformed so as to eliminate the recovery of $30,000 as damages for the breach of the contract, and affirmed as to the amount of the notes, interest, and attorney's fees. The costs of this appeal will be adjudged against the appellee.

## On Motion for Rehearing.

[8] The appellant insists that the issue relative to the fairness of the contract made with the appellee should have been submitted to the jury. The only request for the submission of that issue was so written that in stating the contract some important details were omitted. The court properly refused to submit that issue in the form requested, even if it be conceded that the fairness of the contract was raised by the evidence.

[9] It is also contended that the judgment rendered in this court should not be against the sureties on appellant's supersedeas bond. Article 2101 of the Revised Civil Statutes, relating to supersedeas bonds on appeals from district and county courts, provides that the conditions of the bond shall be:

·"That such appellant or plaintiff in error shall prosecute his appeal or writ of error with effect; and in case the judgment of the Supreme Court or the Court of Civil Appeals shall be against him, he shall perform its judgment, sentence or decree, and pay all such damages as said court may award against him."

The purpose of a supersedeas bond is to secure the payment of the judgment from which the appeal is taken, and it logically follows that, if any part of that judgment is sustained by the appellate court, the sureties become liable for its satisfaction. Where a cost bond only is the basis of the appeal the conditions of the bond are fulfilled when the judgment is reversed, or so reformed as to impose the costs on the party resisting the appeal. Blair v. Sanborn, 82 Tex. 686, 18 S. W. 159.

The motions for rehearing are overruled.