**HOOVER v. SELF et al.** (No. 3142.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 14, 1926.)

1. Corporations ⬤⟿407(2)—President as such held not empowered to employ general manager.

President of corporation which sold men's clothing was not empowered as such to ap-point vice president, a minor stockholder, general manager, and contract to pay him one-third net profits for services, and, in attempting to recover on such contract, burden of proving such authority was on claimant.

2. Corporations ⬤⟿454—Oral contract, which was to be reduced to writing, held not enforceable until executed as written instrument.

Where directors of corporation orally agreed that one of them should be general manager and receive one-third net profits for his services, and that such agreement should be reduced to writing, it did not become complete nor enforceable until formally executed as written instrument.

3. Corporations ⬤⟿425(3)—Director held not estopped from attacking agreement appointing general manager which he refused to sign.

Where directors of corporation orally agreed that one of them should be general manager and receive one-third net profits, and that such agreement should be reduced to writing, director and officer who refused to sign written contract was not estopped to attack it.

Error from District Court, Lamar County; Newman Phillips, Judge.

Suit by E. V. Self against S. M. Gose and others. Judgment for plaintiff, and defendant E. B. Hoover brings error. Reversed and remanded.

This is a suit brought by E. V. Self against S. M. Gose, E. B. Hoover, and the Self-Hoover Company, a mercantile corporation, wherein the plaintiff prays "that he have judgment against the defendants, and each of them, decreeing him to be entitled to have and receive the said sum of $3,089.25 now held in escrow by the First State Bank of Paris, Tex., and that same be ordered paid over to him by said bank." The petition alleges:

"For cause of action herein plaintiff alleges that heretofore, to wit, on the 26th day of March, 1924, he entered into and made a verbal contract with S. M. Gose and Edgar B. Hoover, who, together with this plaintiff, composed the board of directors of the Self-Hoover Company, and that afterwards, to wit, on the 26th day of May, 1924, said contract was reduced to writing, and was signed by the Self-Hoover Company, by S. M. Gose, president, and by this plaintiff, said contract being in words and figures as follows, to wit:
"'The State of Texas, County of Lamar:
"'Know all men by these presents: That this contract and agreement, made and entered into on this the 26th day of May, 1924, by and between Self-Hoover Company, acting by and through its president, S. M. Gose, and E. V. Self, who will hereinafter be styled party of the second part, witnesseth:
"'That the party of the first part has this day employed and does by these presents employ E. V. Self to have the supervision and management of its mercantile business in Paris, Tex., during the year 1924, and in con-

sideration of the said E. V. Self devoting his time, experience, industry, and ability in such supervision and management to pay him the sum of $35 per week as a drawing account, and in addition thereto to pay to the said party of the second part one-third of the net proceeds arising from the business of said corporation during the year 1924, said salary or drawing account to begin on the date of the incorporation of the party of the first part and to end on the 31st day of December, 1924.

" 'That the party of the second part has agreed to accept employment by the party of the first part upon the terms and conditions set out in paragraph 1, and he has agreed and does hereby agree to use his best endeavors, skill, and ability in promoting the interest and business of the party of the first part during the time hereinbefore mentioned.

" 'This contract is made in triplicate, the party of the first part signing same by its president, and the party of the second part signing it in his own proper person, the party of the first part retaining duplicate hereof, and the original remaining in possession of the party of the second part.

" 'In witness whereof, the parties hereto have set their names this the 26th day of May, A. D. 1924.

" 'Self-Hoover Co., Party of the First Part.
    " 'By S. M. Gose, President.
    " 'By ———, Secretary.
    " 'E. V. Self, Party of the Second Part.' "

Continuing, the petition alleges:

"And that, under and by virtue of the terms of said contract, plaintiff was, by the said Self-Hoover Company, employed as manager and supervisor of its business, which was that of the buying and selling of men's clothing and furnishing goods in the city of Paris, Tex., and that he, under and by virtue of the said agreement, gave said corporation his time, experience, industry, and ability in the conducting of said business until the 31st day of December, 1924, when his employment, under and by virtue of said contract, expired.

"Plaintiff further alleges that it was ascertained and agreed that the profits of the Self-Hoover Company from the date of its incorporation, on about March 26, 1924, to December 31, 1924, was the sum of $10,306, less the income tax thereon due to the United States government, which amounts to the sum of $1,038.25, leaving the net profits of the said Self-Hoover Company for the time during which this plaintiff was its manager and supervisor the sum of $9,267.75, to one-third of which this plaintiff was entitled as part compensation for his services; and he alleges that the amount due him as one-third of the profits of said company, to which he is entitled under and by virtue of said contract, is the sum of $3,089.25.

"Plaintiff further alleges that thereafter, to wit, on the 14th day of January, 1925, the said sum of $3,089.25 was placed in escrow with the First State Bank of Paris, Tex., there to remain and be held by said bank until all the parties to this agreement shall, in writing, agree to the disposition of said sum of money so held in escrow by said bank, or until legal proceedings may be instituted and a determination had thereby touching the disposition of said money."

Further, as a plea of estoppel, the petition alleges:

"Plaintiff further alleges that, in the incorporation of said Self-Hoover Company, he and the defendants Edgar B. Hoover and S. M. Gose were the only stockholders therein, 85 of the shares of the said stock belonging to and standing in the name of S. M. Gose, 77 shares belonging to and standing in the name of Edgar B. Hoover, and 3 shares belonging to and standing in the name of this plaintiff; and this plaintiff, knowing that the business which had been bought for the purpose of organizing this corporation had not been a success in the past, but had been forced into bankruptcy, he proposed, and the other two directors agreed, that this plaintiff, as manager, and Edgar B. Hoover would draw small salaries, and that their real compensation would be received from the profits arising from the conduct of said business. Plaintiff says that with a full knowledge of the terms of the contract made and entered into with him by the president of said corporation, in its name and on its behalf, and with knowledge of all the terms thereof, the defendant Self-Hoover Company, S. M. Gose, and Edgar B. Hoover, as directors of the said corporation, accepted and have retained the benefit of the plaintiff's services as manager of said corporation and in the conducting of its business, but now fail and refuse to pay the plaintiff the amount due him under said contract, which he alleges is the sum of $3,089.25."

The defendant Gose, in his capacity as stockholder, and the Self-Hoover Company, as a corporation, both filed a disclaimer of "any interest whatever in the funds now held in escrow by the bank," and asked to "be discharged with costs." The defendant Hoover, as a shareholder in the corporation, besides general denial, pleaded the want of authority of the corporation or the president thereof to make the alleged contract disposing of the net earnings of the company, and that it was made without his consent, and was never ratified by him; and he also filed a cross-action to recover $1,444.50 of the amount in escrow, as a portion due him as a shareholder of the net profits or surplus set apart for distribution among the stockholders according to their respective interests.

The court submitted the following issue to the jury:

"Q. After the application for a charter was signed, and before the opening of the business of the Self-Hoover Company, did Edgar B. Hoover, E. V. Self, and S. M. Gose agree with each other that the plaintiff, E. V. Self, should be paid for his services for the remainder of the year 1924 the sum of $35 per week and a one-third interest in whatever net profits the company might make during the year 1924?" The jury answered, "Yes."

The court rendered judgment in favor of the plaintiff for the full amount of the special fund in escrow, upon the ground of disclaimer on the part of the corporation and of S. M. Gose, and upon the answer of the jury,

as we must assume, establishing estoppel by acquiescence or agreement against the plaintiff in error Hoover. The plaintiff in error Hoover timely complained of the judgment, and has appealed to have it reviewed on the assignment of errors in the record.

It appears that S. M. Gose, E. B. Hoover, and E. V. Self agreed to create a mercantile corporation under the name of the Self-Hoover Company, and to that end signed an application on March 18, 1924, and filed it in the office of the secretary of state on March 19, 1924. On the face of the application, and in fact, the above-named persons were appointed as the three directors of the corporation. S. M. Gose owned 85 shares, E. B. Hoover owned 77 shares, and E. V. Self owned 3 shares of the stock of the corporation. There were no other stockholders. S. M. Gose was president of the corporation, and E. B. Hoover was secretary and treasurer. E. V. Self was vice president, and, as he insists, was general manager. The evidence is conflicting, as to whether or not he was appointed general manager. Out of a part of the capital subscribed, a stock of dry goods was purchased from the trustee in bankruptcy of a certain company adjudged bankrupts. The Self-Hoover Company then regularly opened up and commenced business about March 26, 1924. E. V. Self was an experienced salesman in dry goods and men's clothing, and so was E. B. Hoover. S. M. Gose was not a merchant. E. V. Self and E. B. Hoover both worked in, and gave their full time to, the business in selling goods and managing the business, and they, with two other paid clerks, were the only persons working in the store or having connection with the operation of the business. Mr. Gose was a real estate dealer, living in Wichita Falls. The company did a very successful business during the year 1924, from about March 26, 1924. In January, 1925, a stockholders' meeting was regularly held; the three above-named stockholders being present. At the meeting a report of the business for the year 1924 was read, showing net earnings or a clear gain of $10,306, subject to be set apart for distribution among the stockholders. The parties agreed that the sum stated, less income tax, constituted the net earnings of the corporation and was subject "to a division" among the stockholders. But, as appears, "then the question came up about one-third to E. V. Self," and "then the discussion began to wax warm," and, to settle the controversy, a written agreement was signed by the three parties, dated January 14, 1925. As material, the agreement states:

"(b) It is agreed that the undivided profits in the business of the Self-Hoover Company is $10,306, from which the amount of the income tax has been deducted as follows: After deducting the sum of $2,000, which is allowed as a deducting from the income of said corporation, the balance of the income or profits $8,-306, is figured at the rate of 12½ per cent. to get the tax and which amounts to $1,038.25, which leaves $9,267.75 net profits or income to said business after deducting said tax. From this amount one-third thereof, or $3,-089.25 is deducted, which is claimed by E. V. Self under a written instrument signed by him and said S. M. Gose, which for convenience alone is here denominated a contract, a true copy of which is annexed hereto and marked 'Exhibit A' and made a part hereof. The balance remaining after deducting the said sum of $3,089.25 is $6,178.50, and said Edgar B. Hoover's interest therein is acknowledged by all parties to be a fractional interest of 77/165, making the sum of $2,983.28.

"It is expressly agreed and understood by all the parties hereto that the said Edgar B. Hoover does not recognize the validity 'of said contract' signed between the said S. M. Gose and E. V. Self, a copy of which is annexed hereto and above referred to, and does not recognize that the said E. V. Self is entitled to the said amount of $3,089.25; and therefore it is further agreed by all the parties hereto that the said sum of $3,089.25 is to be placed in escrow in the First State Bank of Paris, Lamar county, Tex., and to be held by it until all the parties to this agreement may in writing agree to the disposition of said sum of money, so held in escrow, or until legal proceedings which may be instituted, either by the said E. V. Self or the said Edgar B. Hoover, in a court of competent jurisdiction, to determine to whom and in what proportion said escrowed money shall be distributed and paid over."

It was proven that, after the application for charter was signed on March 18, and before the opening of the business on March 26, the three above-named persons met together and formally elected themselves as directors and as officers of the corporation for the year 1924. According to the testimony of E. V. Self and S. M. Gose, other proceedings were had at the meeting, but E. B. Hoover testifies to the contrary. In that respect S. M. Gose testified:

"E. V. Self was elected vice president and general manager. He was selected to manage and have supervision of the business for the year. * * * There was an agreement reached as to the salaries. It was agreed that Mr. Hoover and Mr. Self should only draw nominal salaries the first year. I was to draw no salary. The salaries were to be $30 or $35 a week I think. It was agreed that there should be compensation in addition to the salaries. Mr. Self stated that, inasmuch as he had very little stock in the store, and as he had to make it a going concern, he should receive one-third of the net profits for the balance of the year 1924, being 9 months, that he would give all his time, experience, and influence to make it go, and he felt like he should share equally with the other two of us, until January, 1925, in the net dividends or profits, whatever the store made. That was agreed to first by Mr. Hoover and then by myself. Mr. Hoover spoke up and said it was perfectly satisfactory to him, and it was to me. We discussed it a few minutes, then

I made the statement that we should have some kind of a contract to that effect, and that I thought I could write it. I used to be in the real estate business, and wrote a number of contracts. I sat down in the meeting and tried to write one on the typewriter, but after I had written it it did not suit me, and I thought I would attempt to write one next morning. I did not attempt to write one next morning, but I discussed the matter with Mr. Self and Mr. Hoover, and I said I felt like I could write one and would go on back home to Wichita Falls and write one and return it for their signatures. Mr. Self and Mr. Hoover said that would be all right, to write it and return it for their signatures. I returned home and prepared what I thought was a fair contract for all parties. That contract was never returned to me. Later on there was another contract prepared along the same lines. That contract was prepared and presented to me for my signature, and I signed it as president of the Self-Hoover Company. * * * It is a fact that the first contract prepared and presented to Mr. Hoover was not this paper. This paper was prepared by Mr. Patrick. This paper was prepared after I had sent the contract to Mr. Hoover (in March). I do not know whether or not it was after Mr. Hoover had refused to sign the one I prepared. I never did ask Mr. Hoover to sign this contract, or any other contract. I understood that prior to the time the attorney prepared this contract (in suit) Mr. Hoover refused to sign the contract. The idea of the contract was that the profits should be divided equally notwithstanding the ownership of the stock."

E. V. Self testified:

"After we had signed the application for charter and sworn to it, there was a meeting of the stockholders of the corporation held in the office of the Self-Hoover Company's store. The three of us were present at the meeting. There were no other stockholders of the company at that time. At that meeting we went into the election of officers. Mr. Gose was elected president. Mr. Hoover was elected secretary and treasurer, and I was elected vice president and general manager. At that meeting there was an agreement reached as to the compensation to be paid the general manager. I brought the matter up myself. I told them that I felt like the prestige I had in Paris with the people, that I was entitled to one-third of the net profits during the year 1924. Mr. Hoover spoke up and said he thought I was entitled to it, because he thought I could put the business over, and we all agreed to it verbally. In addition to that I was to receive $35 a week drawing account, to live on. Mr. Hoover agreed to that. There was nothing said at the time about having a written contract to that effect. A written contract was afterwards sent by Mr. Gose, and I presented the written contract to Mr. Hoover, but he did not agree to it or sign it, but refused, saying, 'Do you think I am a damn fool, Self?' "

The same witness further testified that later he carried the same written contract to an attorney and had him write one embodying the same terms. The attorney wrote out the contract, and Mr. Self sent it to Mr. Gose for signature. After Mr. Gose had signed and returned the contract, Mr. Self presented it to Mr. Hoover for signature, and Mr. Hoover refused to sign it.

Mr. Hoover testified to the effect that Mr. Self was not made general manager and that no salary or compensation was mentioned or agreed upon at any meeting or by any one, except that Mr. Self and Mr. Hoover were each to receive $35 a week; that when the written instruments were presented to him he each time refused to sign them, stating that no such agreement or understanding was made by him. The instrument drawn up by the attorney on May 26, 1924, was the one offered and read in evidence. There is no evidence showing the general authority of the president to bind the company, or concerning his duties and powers. The testimony is without dispute to the effect that E. B. Hoover never at any time ratified or consented to the written contract, and that he protested it whenever mentioned by them, to Mr. Self and to Mr. Gose.

W. F. Moore, of Paris, for plaintiff in error.

Patrick & Eubank, of Paris, for defendants in error.

LEVY, J. (after stating the facts as above). In order to give the controversy a practical turn, as seemingly the parties did, it can be conceded as an undisputed fact that the directors, being also the shareholders, of the Self-Hoover Corporation, at an annual corporate meeting in January, set apart one-third of the clear gains or net profits of the corporation for the year 1924, less income tax, amounting to $3,089.25, to become the property of the shareholders distributively or E. V. Self, claiming as a creditor of the corporation. It was specially agreed in writing to leave it to "a court of competent jurisdiction to determine to whom and in what proportion said escrowed money shall be distributed and paid over." Therefore, if E. V. Self had a valid and enforceable written contract of the corporation to pay him an amount of salary equal to one-third of the net gains of the corporation, he should recover; otherwise the appellant should recover. He does not make any claim in his pleadings in virtue of an oral agreement or upon quantum meruit. Appellant urges that the evidence speaks unequivocally on the lack of authority of the president of the company to make the alleged written contract.

[1] The fact that S. M. Gose was elected president of the company was not sufficient to show that he had authority to bind the company by the contract set up in the petition. The question of his authority was in issue; and the burden of proving it was on the appellee, under the plea of non est factum filed by the appellant. There is an absence of proof of any express authority grant-

ed to him to act for the company. The board of directors merely elected Mr. Gose president, and, in so doing, contemplated and intended that he should have very little authority to act for the company in the course of the company's business. He was to continue to live in another town, distant from the place, and was not to take any active part in the management or conduct of the store. As he testified:

"I drew no salary; I had no interest in it [the business management] except what I had put in it [referring to his capital stock]."

[2] The entire management of the store business was in fact expressly committed jointly to Mr. Self and Mr. Hoover. And the appellee appears to have recognized that the authority of the president was specially limited, for he alleges, and undertakes to prove, that the board of directors orally authorized and directed the contract of employment, and that the president thereafter, in pursuance of such authority, executed it. The proof, though, in that respect, cannot reasonably be regarded as showing the authority of the president, acting alone, to formally execute the written contract in suit. Mr. Self testified that at the first meeting of the parties after the charter was signed, and before the formal opening of the business on March 26—

"there was an agreement reached as to the compensation to be paid the general manager. * * * We all agreed to it verbally. * * * There was nothing said at that time about having a written contract to that effect."

Consequently there would not appear in this evidence any authority for the president to execute a writen contract, as done by him. The testimony of Mr. Gose is to the extent that, at the first meeting of the parties after the charter was signed, and before the formal opening of the business, it was orally agreed that Mr. Self should receive as compensation for services as general manager "one-third of the net profits for the balance of the year 1924." Continuing, he said:

"That was agreed to first by Mr. Hoover and then by myself. Then I made the statement that we should have some kind of contract to that effect, and that I thought that I could write it. * * * Mr. Self and Mr. Hoover said that would be all right, to write it and return it for their signatures."

[3] Evidently the intention and purpose of the agreement was to have the prior oral agreement reduced to writing and become effective only as a written contract when signed by both the president and the secretary, Mr. Gose and Mr. Hoover; for, as stated, "We should have some kind of contract to that effect," and "Mr. Hoover said to write it and return it for their signatures." Consequently Mr. Gose and Mr. Hoover, as presi-

dent and secretary of the company, acting together, were to be the proper officers for the formal execution of the written contract. The act of the president alone would not be sufficient. The contract did not become complete and legally enforceable, in view of the agreement, until it was formally executed as a written instrument. At any time before it was reduced to writing and formally executed, Mr. Hoover could withdraw his consent, which he did, according to the undisputed evidence. And the evidence is undisputed that Mr. Hoover never did consent to or ratify the written contract after it was signed by Mr. Gose alone. Mr. Self and Mr. Gose both testify that Mr. Hoover did not agree to it or sign it, but refused. He repeatedly refused to sign it. There is no ground in the evidence upon which to predicate estoppel.

We conclude that the judgment should be reversed for insufficiency of evidence, and that the cause be remanded, rather than finally disposed of here.