## LEAK v. HALABY GALLERIES, Inc., et al.
### No. 10938.

Court of Civil Appeals of Texas. Dallas.
March 26, 1932.

Rehearing Denied April 30, 1932.

John Davis and Nathaniel Jacks, both of Dallas, for appellant.

Phillips & Phillips and Thompson, Knight, Baker & Harris, all of Dallas, for appellees.

LOONEY, J.

H. C. Leak sued the Halaby Galleries, Inc., the City National Bank of Dallas, as executor of the estate of N. E. Halaby, deceased, and the directors of the defendant corporation, to recover damages for the breach of a personal service contract between him and the defendant corporation. All defendants, except the corporation, were dismissed on general demurrer, and their connection with the litigation will be given no further notice. The issues framed by the pleadings will be sufficiently disclosed during the progress of the discussion. The trial without a jury resulted in judgment for defendant, from which plaintiff appealed.

The facts are undisputed, and are substantially these: Defendant, a domestic corporation organized for mercantile purposes, was engaged in handling draperies, house furnishings, etc., with an authorized capital of $150,000, half of which was paid up, and, with the exception of $4,000 preferred and about $1,000 common, its outstanding stock was owned by N. E. Halaby, who was president and also performed the duties of a general manager; plaintiff was its secretary-treasurer. At the first stockholders' meeting by-laws were adopted, providing that the affairs of the corporation should be managed by a board of directors elected annually on the second Tuesday in January; that the president should preside at all directors' and stockholders' meetings, and "shall have general supervision of the affairs of the corporation, shall sign all stock certificates and written contracts of the corporation, sign all checks and perform such other duties as are incident to his office." It does not appear that the directors provided what salary or compensation plaintiff should be paid, but they knew he was being paid $250 per month for his services. The directors neither authorized, nor did they know of, the existence of the contract sued upon, or of any claim asserted by plaintiff thereunder the institution of this suit. The contract is in writing, was entered into during the month of March, 1928, and was purportedly executed by the corporation, acting by and through N. E. Halaby its president. Under its terms plaintiff was to perform the duties of office manager for defendant at an annual salary of $3,000, payable $250 per month, plus a minimum bonus of $500. Paragraph 6 of the contract reads: "It is agreed and understood between the parties hereto that the term of this contract shall be from the 1st day of April 1928, up to and including the 31st day of December 1931. It being especially understood, however, that at any time during the term of this contract it may be terminated by either party upon written notice to the other, for cause."

Plaintiff rendered services and received the compensation provided in the contract until defendant was adjudicated a bankrupt by the United States District Court for the Northern District of Texas on an involuntary petition filed in December, 1928, and thereafter was retained in the business by the trustee in bankruptcy, performing similar services and received from him the same compensation stipulated in the contract up to and including March 10, 1929.

The suit was instituted on the idea of an

anticipatory breach, to recover damages for the unexpired portion of the contract; that is, from March 10, 1929, the end of plaintiff's services with the trustee, to December 31, 1931, the date of the expiration of the contract.

The trustee in bankruptcy, having fully administered the estate, made final report July 1, 1929, showing that, after the payment of all proven claims and expenses, he held a surplus of over $40,000 in cash, besides other assets, all of which were returned to and revested in the bankrupt.

After these proceedings, the stockholders, including plaintiff, met October 1, 1929, to provide for the settlement of certain odds and ends of business, and agreed upon and executed articles for the dissolution of the corporation, which, after being properly certified by plaintiff as secretary of the corporation, were filed with the secretary of state and became effective November 1, 1929. Following the meeting of the stockholders, on the same day the directors met, and, among other business transacted, ordered distribution of the fund remaining among the stockholders. Plaintiff was present and kept the minutes of these meetings, was fully cognizant of all that was done, but was silent as to the existence of the contract sued upon, and made no disclosure that he was claiming or intended to assert a claim thereunder.

Plaintiff knew of the bankruptcy proceedings, but failed to assert his claim against the estate. On December 11, 1929, the bankrupt made application for discharge, and on February 3, 1930, was discharged, but it seems plaintiff had no notice of the application, nor of the action of the court thereon until after the discharge became final.

The conclusions filed by the trial court are, in substance, that the president of the corporation, N. E. Halaby, was impliedly authorized to execute the contract of employment sued upon; that the filing of the involuntary petition and the adjudication thereon constituted an anticipatory breach; that by reason thereof plaintiff had a provable claim for damages against the estate, but, as he failed to file or make proof of same, the discharge released the bankrupt from liability thereon; that plaintiff was not entitled to notice of the application by the bankrupt for discharge; and, furthermore, that the judgment discharging the bankrupt was not subject to collateral attack. The court also held that, by assisting in the dissolution of the corporation, plaintiff in effect acquiesced in the breach of the contract, and, knowing that the other stockholders and the directors were ignorant of the existence of the contract, or of his claim thereunder, by permitting them to agree to the dissolution of the corporation and the winding up of its affairs, in ignorance of these facts, estopped him to claim damages for said breach.

■ The first difficulty encountered by plaintiff goes to the validity of the contract sued upon; that is, its effectiveness for a longer period than one year. The trial court concluded, both as a question of fact and of law, that N. E. Halaby, president of the corporation, was impliedly authorized to execute and bind the corporation to the contract. The only facts from which the trial court could have drawn the conclusion that the president, who it seems also exercised the functions of a general manager, was authorized to bind the corporation to such a contract, are these: The president owned substantially all of the stock of the corporation, and was given power of supervision over the affairs and other officers of the corporation, with authority to sign stock certificates, written contracts and checks of the corporation, and to perform such other duties incident to his office. The directors did not expressly authorize the execution of the contract, nor did they know of its existence until the filing of this suit, had never provided what salary plaintiff should be paid, but knew in a general way that he was being paid $250 per month. These facts, in our opinion, did not justify the conclusion that the president was impliedly authorized to bind the corporation to the performance of the contract for the time stipulated; that is, for three years and eight months. The general supervision over the affairs of the corporation given the president related to the usual and ordinary matters and contracts, but did not authorize him to bind the corporation to the performance of the unusual contract under consideration. The power given the president to sign all written contracts for the corporation did not authorize the making of a contract unusual and out of the ordinary in nature, not authorized by the directors. The statute (article 1323, R. S.) provides for the election of directors' annually, and vests that body with the power of general management (article 1327). The by-laws of defendant also have similar provisions.

The fact that the president owned practically all the stock would not change the rule, as the general management of a corporation is placed by statute with the directors, and this without regard to the ownership of the stock. Minority stockholders have rights that should be respected; furthermore, as corporate stock is personal property easily transferable, a majority stockholder to-day may by sale of stock be a minority stockholder to-morrow. Prospective purchasers of stock have a right to rely upon the records of a corporation as reflecting the facts pertaining to its contractual obligations and other matters that affect the value of outstanding stock. Authorities more

or less in point are these: Denton Milling Co. v. Blewett (Tex. Civ. App.) 254 S. W. 236, 238; Hoover v. Self (Tex. Civ. App.) 279 S. W. 572; Prairie, etc., Co. v. Lincoln, etc., Co. (Tex. Civ. App.) 294 S. W. 270; Grice v. American, etc., Co. (Tex. Civ. App.) 35 S.W. (2d) 204; Manross v. Uncle Sam Oil Co., 88 Kan. 237, 128 P. 385, 387, Ann. Cas. 1914B, 827; Pedicord v. Elm Grove, etc., 110 W. Va. 116, 157 S. E. 89; Napier v. Mozena, etc., Co., 86 W. Va. 220, 103 S. E. 125; Sattler v. Howe, etc., 98 N. J. Law, 460, 121 A. 523.

The case of Denton, etc., v. Blewett, supra, writ refused, presented in principle the same question. After citing the statute referred to above, Judge Hodges for the Texarkana court said: "Each new board is responsible to the stockholders for the manner in which the business is conducted, and should, in the nature of things, be free to select its own agents. If one board of directors may contract with a manager for employment extending over a term of five years, they can materially handicap the freedom and power of their successors in the management of the business of the corporation. The successful operation of concerns of this character must depend largely upon the efficiency of the manager. It is too obvious for argument that the financial welfare of the corporation is best served by allowing each in-coming board of directors all the power they may lawfully claim. * * * It is manifest that in providing for a change in the directorate once every year it was intended to reserve to the stockholders the power to also control all those important agents upon whose efficiency the business success of the corporation depended. A general manager stands next to the president in the power of control. Upon his loyalty and efficiency the business success of this corporation appears to have mainly depended. The stockholders could do little at their annual meetings ₁toward removing an inefficient management of the affairs of the concern if so important an official as the manager could not be changed when a change was needed. The following authorities, we think, sustain this conclusion: Llewellyn v. Aberdeen Brewing Co., 65 Wash. 319, 118 P. 30, Ann. Cas. 1913B, 667, and cases cited in notes; Beers v. New York Life Ins. Co., 66 Hun, 75, 20 N. Y. S. 788."

■ We are of opinion, and so hold, that the contract was effective for only one year, and, as the amount received by plaintiff from defendant for services rendered prior to the adjudication, plus the amount paid him by the trustee in bankruptcy to March 10, 1929, equaled a year's compensation, as stipulated in the contract, that he suffered no damage by reason of the alleged breach.

On the assumption, however, that the contract was valid and enforceable for the full time stipulated, what is the status of plaintiff's claim for damages resulting from the an-

ticipatory breach? Plaintiff contends that the discharge of defendant did not bar or affect his claim, in that the same was not provable at the time of the filing of the involuntary petition against defendant, December 4, 1928, because not then due and owing; but, even if the claim might have been proven within the time permitted for proving claims, that it was provable only if and when plaintiff elected to declare the contract breached by reason of defendant's bankruptcy; furthermore, that the discharge did not bar or affect his claim, because he had no notice or knowledge of the application of defendant for discharge, or of the discharge, granted February 3, 1930, until in September, 1930. Pursuing this idea to its conclusion, plaintiff's contention is that he is entitled to judgment for damages against defendant for the full amount due under the terms of the contract, alleged to be $9,916.66, less the sum of $660 earned from other employments between March 10, 1928, when he left the service of the trustee in bankruptcy, and October 8, 1929, and that, on the latter date, he had the legal right to, and did in fact, elect to declare the contract breached because on October 1, 1929, defendant, by unanimous consent of stockholders, took final steps for dissolution, thus incapacitating itself to further continue its business operations.

■ These contentions, in essence, constitute collateral attacks both upon the adjudication and the discharge of defendant in bankruptcy; hence it is pertinent to inquire whether plaintiff had a claim provable in bankruptcy, for if so, defendant was released from liability by the discharge. Plaintiff's claim was not scheduled because he alone knew of the existence of the contract upon which it was based, and, although fully cognizant of the proceedings in bankruptcy from their inception, failed to make proof, therefore must suffer the consequences of his default in that respect (see USCA § 35, tit. 11, Bankruptcy).

Prior to the decision of the Supreme Court, in Chicago Auditorium Ass'n v. Central Trust Co., 240 U. S. 581, 36 S. Ct. 412, 415, 60 L. Ed. 811, decisions of inferior federal courts were in confusion as to the provability of claims arising from an anticipatory breach of executory contracts incident to bankruptcy, and as to what extent damage could be proven. The doctrine announced by the Supreme Court is so fittingly applicable to the case at bar that we adopt the following quotation as stating our opinion as to the law of this case. The court said:

"Executory agreements play so important a part in the commercial world that it would lead to most unfortunate results if, by interpreting the act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corol-

lary, were left still subject to action for nonperformance in the future, although without the property or credit often necessary to enable them to perform. We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement within the doctrine of Roehm v. Horst [178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953], supra.

"The claim for damages by reason of such a breach is 'founded upon a contract, express or implied,' within the meaning of § 63a–4, and the damages may be liquidated under § 63b [11 USCA § 103]. Frederic L. Grant Shoe Co. v. W. M. Laird Co., 212 U. S. 445, 448, 53 L. Ed. 591, 593, 29 S. Ct. 332. It is true that in Zavelo v. Reeves, 227 U. S. 625, 631, 57 L. Ed. 676, 678, 33 S. Ct. 365, Ann. Cas. 1914D, 664, we held that the debts provable under § 63a–4 include only such as existed at the time of the filing of the petition. But we agree with what was said in Ex parte Pollard, 2 Lowell, 411, Fed. Cas. No. 11,252, that it would be 'an unnecessary and false nicety' to hold that because it was the act of filing the petition that wrought the breach; therefore there was no breach at the time of the petition. As was declared [by the same learned judge] in Re Pettingill [D. C.] 137 F. 143, 147; 'The test of provability under the act of 1898 may be stated thus: If the bankrupt, at the time of bankruptcy by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under § 63b (30 Stat. at L. 563, chap. 541, Comp. Stat. 1913, § 9647 [11 USCA § 103]).' It was in effect so ruled by this court in Lesser v. Gray, 236 U. S. 70, 75, 59 L. Ed. 471, 475, 35 S. Ct. 227, where it was said: 'If, as both the bankruptcy and state courts concluded, the contract was terminated by the involuntary bankruptcy proceeding, no legal injury resulted. If, on the other hand, that view of the law was erroneous, then there was a breach and defendant Gray became liable for any resulting damage; but he was released therefrom by his discharge.'"

Plaintiff's contract, on the theory of its legal validity for the full time mentioned therein, was constructively breached when the involuntary petition was filed followed by the adjudication. On proper application to the court, his claim could have been liquidated and proven under subdivision (b) § 103, USCA, tit. 11, Bankruptcy. It is doubtless true that, owing to their contingent and uncertain nature, plaintiff could not have proven damages for the amount now asserted; nevertheless,

within the six months after adjudication allowed for proving (section 93 (n), USCA, tit. 11, Bankruptcy), his claim could have been liquidated for an amount allowable under the recognized rules for the computation of damages of that nature (Ely v. Van Kannel, etc., Co. [C. C.] 184 F. 459; McLean v. Butler [D. C.] 227 F. 325), but, having failed to make proof, defendant's discharge released it from all claims for damages that had or could have arisen from the anticipatory breach (section 35, USCA, tit. 11, Bankruptcy). It would, in our opinion, be contrary to one of the main purposes of the Bankruptcy Act to permit plaintiff, after ignoring the proceedings in bankruptcy, to recover of the discharged bankrupt any amount as damages for the anticipatory breach of the contract. Language employed by the district judge in Re Inman & Co., 171 F. 185, 194, is in point. He said: "I do not believe that it was the intention and purpose of the bankruptcy act that contracts extending into the future for rent and personal services should be left hanging over the bankrupt to embarrass and harass him after his discharge in bankruptcy. It is said that if this is not true, and he is relieved of such liability by the bankruptcy act, it follows that claims for such rent and personal service should be admitted to proof in the bankruptcy proceedings. I do not think this follows at all. The adjudication in bankruptcy ends all such contracts. Of course, proof may be allowed for any amount due prior to the institution of the proceedings in bankruptcy. It is provided by the bankruptcy act that for most personal services the employee would have priority for any amount due him for as much as three months preceding the bankruptcy proceedings. This fact of priority of payment for three months extending to so large a class of employees is another reason why I believe it was the intention, in passing this act, that such contracts should terminate with the adjudication in bankruptcy. All this is certainly true as to a partnership. The adjudication dissolves it by operation of law, and that dissolution ends all its liabilities except such as are expressed in the act."

In Lesser v. Gray, 8 Ga. App. 605, 70 S. E. 104, a claim for damages arising from the breach of an executory contract resulting from bankruptcy was involved; after being rejected by the bankruptcy court, suit was filed thereon in a state court. The Court of Appeals affirming the judgment of the trial court dismissing the cause on demurrer held in effect that damages were not recoverable against the firm or any member for failure to perform a contract for the purchase of merchandise to be delivered as designated, where performance was prevented, not by the act of the buyer, but solely by the bankruptcy law in seizing the assets of the firm and its members under involuntary pro-

ceedings, and that any damages resulting from such breach was in law damnum absque injuria. This case reached the Supreme Court of the United States on the federal question involved, and was affirmed. See Lesser v. Gray, 236 U. S. 70, 35 S. Ct. 227, 228, 59 L. Ed. 471–475. In affirming the decision of the Georgia appellate court, Justice McReynolds for the court drew the distinction between a disallowed claim and a nonprovable claim, saying: "When an alleged debt or obligation is ascertained to be invalid—without lawful existence—the claim based thereon is necessarily disallowed. A disallowed claim and a nonprovable debt are not identical things; and a failure accurately to observe the distinction has led to confusion in argument. * * * The petition in the cause now under review was properly dismissed. If, as both the bankruptcy and state courts concluded, the contract was terminated by the involuntary bankruptcy proceeding, no legal injury resulted. If, on the other hand, that view of the law was erroneous, then there was a breach, and defendant Gray became liable for any resulting damage; but he was released therefrom by his discharge. In this state of the record we will not enter upon a consideration of the specific reason assigned by the state court for sustaining the demurrer." In view of the provisions of the bankruptcy statutes and these decisions construing same, we think the conclusion is inescapable that, by the discharge, defendant was released from any and all claims for damages that resulted from the anticipatory breach of the contract.

█ Plaintiff's contention that he was not affected by the discharge of defendant, because he had no notice of the application for discharge, is, in our opinion, untenable. With knowledge of the bankruptcy proceedings, he failed to make proof of his claim; therefore was not entitled to such notice, and is in no position to make this contention.

█ The collateral attack made by plaintiff upon the validity of the adjudication and discharge is seemingly based upon the idea that the bankrupt was not in fact insolvent when adjudicated. The judgment adjudicating defendant a bankrupt is conclusive and cannot be impeached in this manner. The law on this subject is tersely stated in 34 C. J. 517 § (820) 5, as follows: "An adjudication of bankruptcy, made by the proper Federal court, cannot be impeached in any collateral proceeding, except on the ground of a want of jurisdiction. The rule applies also to a discharge in bankruptcy."

Plaintiff's position is based upon the following situation: After payment of all proven claims and expenses of administration, over $40,000 in cash remained in the hands of the trustee and was returned to the bankrupt and distributed pro rata among stockholders. His contention, in effect, is that, under the facts and circumstances, he could ignore the proceedings in bankruptcy and elect not to declare an anticipatory breach of the contract by reason of the adjudication, but had the legal right to declare a breach when the corporation dissolved and thereby became incapacitated to carry out the contract; that, as defendant was solvent at the time of the adjudication, the bankruptcy court was without jurisdiction, and for this reason the adjudication and discharge are void and subject to collateral attack; therefore he is entitled to judgment against defendant, at least in such limited form as will enable him to enforce his claim against its stockholders, directors, and trustees.

It is true that the administration of the estate produced an unusual result, that is, a surplus of over $40,000 in cash remained after paying all proven claims and expenses of administration; but this incident, while out of the ordinary, might possibly result from any number of imagined causes, such as superior business management on the part of the trustee, increased demand for, or enhanced market value of, merchandise or other assets of the estate, or from some fortuitous circumstances, etc., but the fact that a surplus remains after the administration, from whatever cause, cannot be given the conclusive effect of damning and avoiding the entire proceedings, as contended by plaintiff.

It may be conceded that insolvency of the debtor is the basic jurisdictional fact that puts in operation the machinery of the bankruptcy law, but, when adjudicated, the status of the debtor is that of a bankrupt, all jurisdictional issues are at rest, the adjudication is conclusive as to all persons and immune from collateral attack.

█ While a discharge releases the personal liability of the bankrupt, it does not affect secondary liabilities nor prevent a creditor from taking judgment against the bankrupt in such limited form as will enable creditors to enforce secondary liabilities. In re Marshall Paper Co. (C. C. A.) 102 F. 872; Manufacturers', etc., v. Vye-Neill Co. (D. C.) 46 F. (2d) 146. However, we do not think the facts of the instant case bring it within the rule. As originally instituted, plaintiff made the directors of the corporation parties, but as to them the suit was dismissed on general demurrer, no exception was reserved to the action of the court in that respect, the judgment became and is final; therefore there exists no basis for the contention that plaintiff is entitled as against defendant to even a limited judgment as basis upon which to fix secondary liabilities, if such in fact exists.

Plaintiff cites In re Lenox (D. C.) 2 F.(2d) 92, and relies upon the doctrine there announced as authority for his asserted right to subject the surplus, or so much as is necessary, to the satisfaction of his alleged claim. That case, in our opinion, is not in point, even if the doctrine announced is a correct

statement of the law. The facts involved were these: Lenox was adjudicated a voluntary bankrupt; he owned land in Pennsylvania that was sold for an amount insufficient to pay a lien against it held by a bank. Afterwards, certain coal lands owned by the bankrupt in West Virginia were sold advantageously and a considerable fund remained after the satisfaction of certain liens that existed on the land. Thereafter the receiver of the bank, who had failed to make proof of the bank's claim within the time limited by the statutes, offered belated proof at a hearing fixed for final distribution and asserted a claim to the fund that remained after payment in full of all debts that were proven in time. The bankrupt objected, on the ground that the claim was not timely proven; this objection was sustained by the referee, his action was certified to the district court for review, and was by the court reversed and the cause remanded, with directions to the referee to make an equitable distribution of the surplus among the creditors. In reaching this conclusion, the court observed that, as the bankrupt law makes no provision for the distribution of a surplus remaining after· all proven claims have been paid, principles of equity must control; that the statute limiting the time within which claims shall be proven is for the benefit of creditors, and that, where a fund remains in the hands of a trustee after the payment of all proven claims, a creditor whose debt was scheduled but not proven within time is entitled to make proof of his claim subsequently, and share in the distribution of the surplus.

It will be observed that the claim of this creditor had been scheduled, and all proceedings had were in accordance with and not in defiance of the orders of court administering the estate, as in the instant case. The effect of the holding is that any surplus remaining after payment of proven claims and expenses of administration may be reached in the same proceedings by a creditor who makes proof, although, after the time limited in the statutes, the only penalty visited for dereliction is postponement in payment until after all claims proven within time are fully paid. We do not think this case at all in point.

Again, if we assume that the employment contract was valid and enforceable for the full time stipulated, plaintiff, in our opinion, would not in any event be entitled to recover damages arising from its breach beyond October 1, 1929, the date he and other stockholders executed ·the articles of dissolution. He knew the corporation could not continue business activities after dissolution and that its existence as a corporate entity would be brought to an end; therefore his consent ·to and participation in the dissolution was tantamount to an abandonment of the contract. 13 C. J. 627; Burks v. Neutzler (Tex. Com.

App.) 2 S.W.(2d) 416; Merchants-Citizens', etc., v. Mauser, 297 Pa. 399, 147 A. 90; Baker v. School District, 120 Neb. 513, 233 N. W. 897; Sanborn v. Ballanfonte, 98 Cal. App. 482, 277 P. 152, 153. The contract contained this provision: "That at any time during the term of this contract it may be terminated by either party upon written notice, for cause." The articles of dissolution in legal effect terminated the contract for cause, and served the purpose of a written notice, within the meaning of the provision of the contract just quoted. Black, on Resc. & Cancellation (2d Ed.) vol. 3, § 571; Groce v. Yates (Tex. Com. App.) 288 S.W. 161.

We have carefully considered all assignments and propositions, and, finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.